UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

AUDREY THOMPSON,

Plaintiff,                    12-CV-6212 CJS

-v-

ABVI GOODWILL SERVICES,

Defendant.

APPEARANCES

For Plaintiff:            Christina A. Agola, Esq.
                          Christina A. Agola, PLLC
                          1415 Monroe Avenue
                          Rochester, New York 14618

For Defendant:            James Holahan, Esq.
                          Bond, Schoeneck & King, PLLC
                          350 Linden Oaks, Suite 310
                          Rochester, New York 14610

INTRODUCTION

This is an action for employment discrimination brought pursuant to the Age

Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. and the New York

Human Rights Law ("NYHRL").  Now before the Court is Defendant's motion to dismiss the

complaint. (Docket No. [#5]).  The application is granted.

BACKGROUND

The following facts are taken from Plaintiff's Complaint (Docket No. [#1]) in this action

and are presumed to be true for purposes of this motion.  At all relevant times Plaintiff was

sixty years of age.  Plaintiff began working for Defendant in 1976, and was terminated

approximately thirty-five years later, on January 7, 2011.

In 1996, Plaintiff began working in the Finance Department.  At the time of events at issue here, Plaintiff's job title was "Finance Administrator."   In 2008, "Ms. Sullivan" ("Sullivan") became Defendant's Chief Financial Officer and Vice President.  The Complaint does not allege Ms. Sullivan's age.  Plaintiff alleges that over the next three years, several incidents occurred, leading up to the termination of her employment, which are indicative of age discrimination.  The Court will list those events by the year in which they occurred.

2009

In or about April 2009, at a staff meeting where unspecified employees were present, Sullivan "dropped a bunch of papers on a desk" and "asked all employees to pick a job from the pile and do it, [because] she could not do it all on her own." Complaint ¶ 13.  The Complaint does not indicate whether Plaintiff was present at the meeting, what the jobs were, or whether Plaintiff volunteered to take any of the jobs.  The following day, a manager, who is unnamed in the Complaint, told Plaintiff that there was "no work" for her to do at that time.   A few days later, Plaintiff asked Sullivan why she was not receiving any work assignments, and Sullivan allegedly responded that Plaintiff was "nothing but a low level accountant" and that there was nothing for her to do in the Finance Department. *Id*. at ¶ 16. During that same meeting, Sullivan asked Plaintiff when she was "going to retire." Id. at ¶ 17.

Approximately six months later, in October 2009, Defendant's Human Resources Manager, Mary Philips ("Philips"), whose age is unspecified, told Plaintiff that she was being "written up" for three separate infractions: 1) making racist comments to a Hispanic co-worker; 2) refusing to participate in a company-sponsored team-building exercise; and 3) rolling her eyes during a recent staff meeting. *Id*. at ¶ ¶ 19-24.  Plaintiff contends that all

2

three of those allegations were false.  A few days later, someone, presumably Sullivan, ordered Plaintiff to vacate the office in which she had worked for  fourteen years, and to move into another office with three other employees, so that Plaintiff's former office could be used by Sullivan's secretary. *Id*. at ¶ ¶  25-26.

2010

More than a year after being evicted from her office, in November 2010, Defendant's "new Comptroller," Cathy Vail ("Vail"), sent an email directing the Finance Department staff to attend a "meet and greet meeting" to "go over the structure of the Finance Department." Complaint at ¶ 27.   Plaintiff responded to the email by asking Vail to provide her with an "organizational chart of the Finance Department." *Id*. at ¶ 28.   The actual content of Plaintiff's email is not contained in the Complaint, and therefore it is impossible to assess the tone of the communication.  However, Vail characterized Plaintiff's response as being "insubordinate," and she suspended Plaintiff without pay pending a meeting between Plaintiff and Human Resources Director Rosemarie Becher ("Becher"). *Id*. at ¶ ¶ 30-31. During the subsequent meeting, Becher  told Plaintiff that Plaintiff's "work was crappy" and that she made "too much money." *Id*. at 32.   During the same meeting, Becher looked at Plaintiff's personnel file, and asked Plaintiff if she would "consider working at Wegmans full time instead of working for Defendant." *Id*. at ¶ 33.  Becher told Plaintiff that she was not going to "write Plaintiff up" for  being insubordinate, but that Plaintiff would need to attend a further meeting "to determine a future course of action." *Id*. at ¶ 34.  Later, though, Plaintiff did receive "an official write-up" for being "rude" to Vail. *Id*. at ¶ 37.   Moreover, at the subsequent meeting, Becher and Philips reduced Plaintiff's schedule from 37.5 hours per

week to 30 hours per week, and ordered Plaintiff to attend weekly "coaching" sessions with Philips.  Plaintiff contends that the coaching sessions were not helpful, and that Philips admitted that the sessions were "dumb." *Id*. at ¶ 39.

<u>2011</u>

On January 7, 2011, approximately fifty days after the alleged "rude" email incident, during a coaching session with Philips, Philips told Plaintiff that "she never gets any work in finance because she refused to give up her nutrition billing." Complaint at ¶ 40.  Plaintiff maintains that Philip's comment was "false and was the first time [she] had ever heard anything of the sort from management." *Id*. at ¶ 40.  In response, Plaintiff told Philips that her statement was "a lie." *Id*. at ¶ 41 ("Plaintiff told Philips that her allegation was a 'lie.'"). Later that same day, Plaintiff was summoned to a meeting with Sullivan, Vail and Mike Flatt ("Flatt"), a Human Resources Representative, where she was fired, purportedly for calling Philips a liar: "Plaintiff was informed that she was being terminated, effective immediately, because she had said that her manager lied earlier in the day." *Id*. at ¶ 44.

<u>The Instant Action</u>

After pursuing her administrative remedies, Plaintiff commenced this action, alleging age discrimination in violation of the ADEA and NYHRL.  Defendant subsequently filed the subject motion to dismiss.  The motion was fully briefed, and on January 31, 2013, counsel for the parties appeared before the undersigned for oral argument.

DISCUSSION

Defendant has moved to dismiss the complaint for failure to state a claim, and the standard for such motions is well settled:

> Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007); *see also, ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir.2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.' ") (*quoting Bell Atl. Corp. v. Twombly* ) (footnote omitted).

When applying this "plausibility standard," the Court is guided by "two working principles":

> First, although a court must accept as true all of the allegations contained in a complaint,[1] that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss, and determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

---

[1]The Court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir.1999), cert. den. 531 U.S. 1052, 121 S.Ct. 657 (2000).

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir.  2009) (citations and internal quotation marks omitted).  "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 1950 (2009) (citation omitted)

To establish a prima facie case of discrimination under either the ADEA[2] or NYHRL,[3] a plaintiff must show four things: "(1) that he was within the protected . . . group, (2) that he was qualified for the position, (3) that he experienced adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of discrimination." *Spataro v. Glenwood Supply*, 479 Fed.Appx. 403 (2d Cir. Oct. 4, 2012) (*quoting Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 107 (2d Cir.2010) *and also citing Abdu–Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir.2001)) (internal quotation marks omitted).

Of course, a discrimination plaintiff is not required to plead the elements of a *prima facie* case. *See, Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508, 122 S.Ct. 992, 995 (2002).  However, "while an ADEA plaintiff need not plead 'but-for' causation, his complaint must contain sufficient facts to make plausible the conclusion that 'but for' his age, he would not have suffered the challenged action." *Williams v. Addie Mae Collins Community Service*,

---

[2] "Under the ADEA, in addition to showing that the defendant discriminated [disparate treatment] against him or her on the basis of age, the plaintiff must also show  that age discrimination was a "but-for" cause of the adverse action, and not merely one of the motivating factors." *Castellanos v. Montefiore Medical Center*, No. 09 Civ. 9400(LAP),  2012 WL 4471573 at *5 (S.D.N.Y. Sep. 27, 2012)) (*citing Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009)).

[3] Claims for age discrimination under the NYHRL "are subject to the same analysis as claims brought under the ADEA." *Abdu–Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir.2001) (citation omitted).

No. 11 Civ. 2256(LAP), 2012 WL 4471544 at *3 (S.D.N.Y. Sep. 27, 2012) (citations and internal quotation marks omitted).[4]

In the instant case, the Court begins by identifying certain allegations in the Complaint that are not entitled to the assumption of truth, because they are mere conclusions.[5]  First, Plaintiff alleges that Sullivan's question about whether Plaintiff was "going to retire" was "further proof of Sullivan's desire to eliminate Plaintiff because of her age, and . . .the 'but for' reason for her actions." Complaint ¶ 17.  However, this characterization of Sullivan's motive is a mere conclusion.  Next, Plaintiff alleges that during her meeting with Becher in November 2010, "Becher looked into Plaintiff's personnel file, and when she saw that Plaintiff was sixty (60) years old, asked Plaintiff if she would 'consider working for Wegmans full time' instead of working for Defendant." *Id*. at ¶ 33.  Plaintiff's contention that Becher learned Plaintiff's age from looking at her personnel file, and that such information prompted Becher to ask Plaintiff about working elsewhere, is mere speculation, not a factual allegation.  Plaintiff further alleges that "Defendant's reason for terminating Plaintiff was pre-textual," and that "Plaintiff was terminated because of her age, and age was the 'but for' reason for her termination." *Id*. at ¶ ¶ 45-56.  Obviously, those statements are mere conclusions that are not entitled to the assumption of truth.  Lastly, Plaintiff alleges that she

---

[4]"[W]hile Title VII explicitly authorizes discrimination claims where an improper consideration was merely 'a motivating factor' for an adverse employment action, an ADEA [disparate treatment] claim will lie only where age was the 'but-for' cause of the action." *Williams v. Addie Mae Collins Community Service*, 2012 WL 4471544 at *2 (citations and internal quotation marks omitted).

[5]*See, Ashcroft v. Iqbal*, 556 U.S. at 679, 129 S.Ct. at 1950 ("[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.")

was terminated "because of [her] age, while other similarly situated younger employees were retained." *Id*. at ¶ 51.  However, the Complaint does not allege any facts to support that contention.  For example, the Complaint does not specifically refer to any younger employees, let alone ones who were similarly situated.  In that regard, the Complaint does not allege that any younger employee called a supervisor a liar and was not fired.  Nor does Plaintiff allege that she was replaced by a younger person.

The Court is therefore left to consider the significance of a few comments, made over a span of two years by different supervisors, whose ages are not pled, which Plaintiff contends are indicative of age-based discriminatory animus.  Specifically, Plaintiff relies on Sullivan's statement that Plaintiff was "nothing but a low-level accountant" and her question about when Plaintiff was going to retire, uttered twenty months before Plaintiff was fired, as well as Becher's comment that Plaintiff's work was "crappy" and that Plaintiff was paid too much, and Becher's question as to whether Plaintiff would consider working at Wegmans full time, which were uttered more than a month before Plaintiff was fired. *See*, Pl. Memo of Law [#8] at p. 11.  Having considered all of those comments together, along with all the other facts in the Complaint, the Court concludes that the Complaint does not plead a plausible claim of age discrimination.

In reaching this determination, the Court considers that a single stray comment about an employee's plans to retire is ordinarily not sufficient to suggest age-based discriminatory animus, but it may help to establish a prima facie case if there is additional evidence of such animus. *See, Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 136 (2d Cir. 2000) ("Carlton also alleges that Baldari suggested, during the meeting regarding his termination, that he should 'retire,' and that this constitutes additional evidence of age discrimination.   Although

evidence of one stray comment by itself is usually not sufficient proof to show age discrimination, that stray comment may bear a more ominous significance when considered within the totality of all the evidence.  Hence, it furnishes support for Carlton's prima facie case.") (citation and internal quotation marks omitted);[6] *Danzer v. Norden Systems, Inc.*, 151 F.3d 50, 56 (2d Cir. 1998) ("When, however (as in the instant appeal), other indicia of discrimination are properly presented, the remarks can no longer be deemed 'stray,' and the jury has a right to conclude that they bear a more ominous significance."); *Lorenzo v. St. Luke's-Roosevelt Hosp. Center*, 837 F.Supp.2d 53, 67 (E.D.N.Y. 2011) ("[T]he adverse action occurred in a context that can give rise to an inference of age-based animus: Rivera was effectively demoted by a supervisor who was only 40 years old at the time of the demotion, and who had previously made comments to her about the timing of her retirement.  A jury could infer from Orbe's age and his statements regarding Rivera's retirement that he acted out of age-based animus in stripping her of her credentialing duties.").

Moreover, "the proper focus is on whether there is a nexus between the comments and the decision to terminate the employee." *Williams v. Quebecor World Infiniti Graphics*, 456 F.Supp.2d 372, 385 (D.Conn. 2006); *see also, Cartagena v. Ogden Servs. Corp.*, 995 F.Supp. 459, 463 (S.D.N.Y. 1998) ("[Comments like 'You fucking Puerto Rican can't do the job right'] are certainly not "stray remarks"—these remarks were allegedly directed at the plaintiff in connection with a criticism of his work skills, during the time period immediately

---

[6]One District Court has opined that this rule applies to summary judgment motions but not 12(b)(6) motions. *See, Hemans v. Long Island Jewish Medical Ctr.*,No. 10–CV–1158 (JFB)(AKT), 2010 WL 4386692 at *8 (E.D.N.Y. Oct. 28, 2010).

prior to plaintiffs discharge. If said, a reasonable jury could believe that these remarks directly reflect the alleged discriminatory attitude, on the part of the man who admittedly made the decision to fire Cartagena.") (citation and internal quotation marks omitted).  On this point, the Second Circuit has

> identified four non-dispositive factors appropriately considered in deciding what weight to accord isolated remarks suggestive of discriminatory bias: "(1) who made the remark (i.e., a decision-maker, a supervisor, or a low-level co-worker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and (4) the context in which the remark was made (i.e., whether it was related to the decision-making process).

*Fried v. LVI Services, Inc.*, No. 11–4791–CV, 2012 WL 4856403 at *1 (2d Cir. Oct. 15, 2012) (citation omitted).

In the subject case, the Court finds that only one of the alleged comments could reasonably be viewed as pertaining directly to Plaintiff's age, and that is Sullivan's question about when Plaintiff planned to retire.  The remaining comments, such as Becher's comments about the quality of Plaintiff's work and the amount Plaintiff was paid, and her question about whether Plaintiff would consider working full time for another employer, do not plausibly suggest age-based discriminatory animus.  Specifically, Becher's comment that Plaintiff's work was "crappy" and that she "ma[de] too much money" does not reasonably suggest age-based discriminatory animus.  Rather, it would be more natural and reasonable to infer that Becher simply meant that the quality of Plaintiff's work did not justify the salary she was being paid, and such comment is not discriminatory. *See, Wado v. Xerox Corp.*, 991 F.Supp. 174, 192 (W.D.N.Y. 1998) ("Gusciora's supervisors' demand[ ] that he justify

his salary . . . relate[s] only to economic concerns, not to Gusciora's age. The fact that age may have some correlation with salary does not mean that an employer's concerns about high-salaried employees is indicative of age discrimination.") (citations omitted).   As for Becher's suggestion that Plaintiff go to work for Wegmans, Plaintiff apparently wants the Court to draw the inference that suggesting a person "work for Wegmans full time" is an age-based slur, on the assumption that only old people work for Wegmans, but the Court cannot reasonably draw any such inference.[7]   Moreover, the Complaint does not indicate that Becher was involved in the decision to terminate Plaintiff's employment.

The last comment to consider is Sullivan's question about Plaintiff retiring, made twenty months before Plaintiff's employment was terminated.  The comment is potentially significant, since Sullivan, along with two other individuals, made the decision to terminate Plaintiff's employment.  However, the Court does not find any plausible nexus between that comment and the termination of Plaintiff's employment.  Any such nexus appears to be entirely negated by the fact that Plaintiff was promptly fired immediately after she admittedly accused the company's Human Resources Manager, Philips, of lying.  More specifically, Plaintiff called Philips a liar during a job coaching session in which Philips was attempting to explain to Plaintiff why she was "not getting work" to do.  There was no mention of Plaintiff's age during this incident.  Consequently, it seems entirely implausible to suggest

---

[7] Wegmans Food Markets is a popular East Coast supermarket chain based in Rochester, New York, which has consistently been ranked one of the most employee-friendly companies in the U.S. See, http://money.cnn.com/magazines/fortune/bestcompanies/2011/snapshots/3.html (Noting that of the "100 Best Companies to Work For" in the U.S. , Wegmans was ranked the third for both 2010 and 2011).  Wegmans is a large corporation which presumably employs many accountants and financial personnel.  Such query by Becher does not imply age-based discriminatory animus.

that it was Plaintiff's age, and not her insult to Philips, which was the "but for" cause of her termination.[8]

To summarize, the Court finds that even when considering all of the underlying facts together, including all of the complained-of statements, they do not plausibly suggest discrimination under the ADEA.

Plaintiff nevertheless contends that the aforementioned comments are sufficient to plausibly suggest age discrimination, pursuant to *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120 S.Ct. 2097 (2000), since they indicate "ageism" and were made, in part, by a person involved in the decision to terminate Plaintiff's employment. *See*, Pl. Memo of Law at p. 10.  The Court, though, disagrees and finds that *Reeves* is factually inapposite, since the comments in *Reeves* were qualitatively different, and involved direct references to the employee's age in connection with his ability to do his job.  For example, in *Reeves* the supervisor who made the decision to fire the employee had previously told the employee that he "was so old he must have come over on the Mayflower" and that he "was too damn old to do his job." *Reeves*, 120 S.Ct. at 2110-2111.  The subject case bears no resemblance to that situation.[9]  Plaintiff also cites *Kaniff v. Allstate Ins. Co.*, 121 F.3d 258, 263 (7th Cir. 1997)[10] for the proposition that where "an employee in the protected age group [is] hounded

---

[8]As mentioned earlier, Plaintiff conclusorily alleges that she was terminated while similarly situated younger employees remained employed.  The Complaint does not allege any other type of disparate treatment.

[9]Plaintiff states that, "[a]fter *Reeves*, a clear derogatory comment about age made by a decision-maker is relevant proof fo the decision-maker's ageist animus." Pl. Memo of Law at p. 10.  However, unlike the employee in *Reeves* who denied any wrongdoing, Plaintiff admittedly called her supervisor a liar and was immediately fired for that very act.

[10]At oral argument, the Court asked Plaintiff's counsel to name the case that best supported his position, and he responded with the *Kaniff* decision.

about retirement despite evidence of adequate performance," "repeated references to retirement may permit a jury to infer discrimination."   However, as the foregoing quote indicates, *Kaniff* is factually inapposite, since the instant case does not involve repeated references to retirement.   Moreover, although *Reeves* and *Kaniff* did not involve the issue of plausibility which is before this Court, if they had they would be even more distinguishable, because in both of them the employee denied the wrongdoing for which he was purportedly fired, while Plaintiff admits the wrongdoing for which she was purportedly fired.

Considering the totality of the facts alleged in the Complaint, the Court finds that Plaintiff has not pled a plausible claim of age discrimination.   That is, the Complaint simply does not plausibly suggest that Plaintiff's age was a "but for" reason for any of the events about which she complains, such as the termination of her employment.   In that regard, as already mentioned the Court is particularly mindful of the fact that Plaintiff admittedly called her Human Resources Manager a liar, immediately prior to being fired, and during a meeting designed to improve Plaintiff's work performance in which there was no reference to Plaintiff's age.   The Complaint does not suggest that any younger employee called a supervisor a "liar" and was not fired.   Accordingly, the Complaint will be dismissed for failure to state a claim.

The Court is mindful that dismissals under FRCP 12(b)(6) are usually granted with leave to replead, unless the Court determines that such leave would be futile. *See, Stern v. General Elec. Co.*, 924 F.2d 472, 477 (2d Cir.1991) ("[D]ismissals for insufficient pleadings are ordinarily with leave to replead.") (citation omitted); *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) ("A district court has discretion to deny leave for good

reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.").

Plaintiff here has not made an alternative request for leave to re-plead, but the Court would

deny such request in any event.  In that regard, the Court does not view the Complaint's

deficiencies as being the kind that could be corrected with better pleading.  Instead, the

Court views the Complaint's deficiency as arising from a mistaken view of the legal

significance of facts which have already been set forth in adequate detail.

CONCLUSION

Defendant's motion [#5] is granted, and this action is dismissed with prejudice.

SO ORDERED.

Dated:     February 7, 2013
           Rochester, New York

                                              /s/ Charles J. Siragusa
                                              CHARLES J. SIRAGUSA
                                              United States District Judge